UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 11-71-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STEPHANIE FARIELLO, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Stephanie Fariello is currently serving a term of imprisonment of 87 months based on her involvement in a conspiracy to distribute oxycodone. [Record No. 249] This matter is currently pending on consideration of Fariello's request for relief pursuant to 18 U.S.C. § 3582(c)(2) based on recent changes in the drug tables used to determine non-binding guideline ranges for incarceration applicable to certain federal drug offenses.[1] [Record No. 294] For the reasons outlined below, Fariello's motion will be denied.

---

1   Fariello's request is contained in a letter dated October 14, 2014, which the Court has construed as a motion seeking relief under 18 U.S.C. § 3582(c)(2). [Record No. 294] Although counsel has not been requested, the Court notes that there is no constitutional right to counsel or to a hearing in proceedings filed under 18 U.S.C. § 3582(c)(2). *United States v. Whitebird*, 55 F.3d 1007 (5th Cir. 1995); *United States v. Townsend*, 98 F.3d 510 (9th Cir. 1996); *United States v. Webb*, 565 F.3d 789 (11th Cir. 2009); and *United States v. Legree*, 205 F.3d 724 (4th Cir. 2000), *cert. denied*, 531 U.S. 1080 (2001).

A motion filed under 18 U.S.C. § 3582(c)(2), "is simply a vehicle through which appropriately sentenced prisoners can urge the court to exercise leniency to give [them] the benefits of an amendment to the U.S. Sentencing Guideline Manual. As such, it does not entitle [a prisoner] to appointed counsel." *Townsend*, 98 F.3d at 513 (citing *Whitebird*, 55 F.3d at 1011). Instead, the district court has discretion to determine whether appointment of counsel is warranted. Where, as here, the record and information

On November 10, 2011, a seven-count Indictment was returned against Stephanie Fariello and six other defendants. Fariello was charged in Count 1 with conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. She was also charged in Count 3 with aiding and abetting the distribution of oxycodone in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. [Record No. 1] On February 9, 2012, a superseding Indictment was returned, but the charges remained the same against Fariello. [Record No. 102] Fariello subsequently pleaded guilty to Count 1 of the superseding Indictment.

Paragraph 3 of the written Plea Agreement summarizes Fariello's role in the conspiracy. It states:

> (a) From approximately June 2010 and continuing through June 23, 2011, the Defendant conspired with Doug Dischar, Joshua Prewitt, Daniel Cahill, Megan Johnston, Bonnie Rademaker, Ryan Venable, Jerry Broome, Daniel Stevens, and others to distribute oxycodone, a Schedule II controlled substance, in the Eastern District of Kentucky.
>
> (b) Over the course of several months, the Northern Kentucky Drug Strike Force (NKDSF) utilized a confidential informant (CI) to make several controlled purchases of oxycodone from the individuals named above. The purchases occurred in Kenton County and all of the substances were tested and found to contain oxycodone, a Schedule II controlled substance.
>
> (c) On February 3, 2011, the CI contacted Dischar and arranged to buy 2 oxycodone 30 milligram pills for $40. The CI ultimately purchased the pills from Joshua Prewitt, at Dishcar's residence in Elsmere, Kentucky, where he lived with the Defendant.
>
> (d) On February 8, 2011, the CI contacted Dischar and arranged to buy 10 oxycodone pills. The CI gave Dischar $200 upfront and Dischar indicated the pills would be arriving the following day. Over the next 2 days, the CI inquired about the status of the pills, and was advised by Prewitt that they

---

possessed by the Court from the original sentencing is sufficient to consider any motion filed under 18 U.S.C. § 3582(c)(2), appointment of counsel would be unnecessary and a waste of resources.

would not be arriving until February 11, 2011 (Prewitt gave the CI the tracking number for the package, which was arriving from Florida, as confirmation). The pills actually arrived on February 10. On that date, the CI went to Dischar's house and met the Defendant (Dischar's girlfriend), who handed the CI a plastic baggie containing 10 oxycodone pills.

(e) On May 25, 2011, the CI purchased an additional 10 oxycodone pills from Dischar for $300. The exchange took place inside the CI's vehicle, down the street from Dischar's house. Dischar indicated that he was expecting a large shipment that day, but only received 100 and had approximately 40 left.

(f) On June 21, 2011, the CI again purchased 10 oxycodone pills from Dischar for $300. The exchange took place in the parking lot of Friday's restaurant, located in Crestview Hills. Dischar agreed to sell the CI 20-25 more pills the following day for a reduced price.

(g) On June 22, 2011, the NKDSF obtained and executed a search warrant on Dischar's residence. Agents recovered 277 oxycodone pills, over $3,000, and drug paraphernalia, including a pill cutter, grinder, and scale. Dischar agreed to be interviewed and acknowledged receiving pills for distribution through the mail. Dischar identified Jerry Broome and Daniel Stevens, both from Florida, as his sources of supply. According to Dischar, he would deposit money into a bank account for Broome, who would then withdraw it and mail the pills. He would do the same with Stevens, as well as conceal money inside electronics that were then mailed to Stevens. According to Dischar, he received 100-500 oxycodone 30 milligram pills every week for the past year. He stated that he also obtained pills from physicians in Florida. Dischar also acknowledged using other people to make sales, deposit money, and/or receive packages for him. These individuals included, but were not limited to, the Defendant, Joshua Prewitt, Megan Johnston, Daniel Cahill, Bonnie Rademaker, and Ryan Venable.

(h) That same day, Dischar made a monitored and recorded phone call to Jerry Broome to arrange for the delivery of 50 oxycodone pills for $750. NKDSF deposited the money into a PNC account in the name of Jerry Broome. The pills were shipped by Broome via USPS on June 23, 2011 and the package (containing 50 oxycodone pills) was intercepted by USPIS.

(i) Dischar also made a monitored and recorded phone call to Daniel Stevens. During the call, Stevens told Dischar to let him know when he's ready, and talked about "getting the next ones."

(j) The Defendant acknowledges assisting Dischar in the distribution of oxycodone by making sales, depositing money that was payment for pills, and

receiving packages containing pills for distribution. From April 2010 and continuing through June 2011, Dischar obtained approximately 15,000 pills for distribution.

[Record No. 247, p. 2–3]

Following her initial appearance and arraignment, Fariello was released on bond and ordered to participate in substance abuse aftercare. However, bond was ultimately revoked after the defendant violated her conditions by using narcotics and continuing to communicate with individuals named in the Indictment. [Record No. 58]

Fariello was sentenced on July 30, 2012. There were no objections to the defendant's Presentence Investigation Report ("PSR"). The Base Offense Level was determined to be 34 under the United States Sentencing Guidelines. Fariello received a two-level reduction under the safety valve (U.S.S.G. § 5C1.2(a)) and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. [PSR, p. 7] As a result, her Total Offense Level was 29 and her non-binding guideline range for imprisonment was 87 to 108 months. [*Id.*, pp. 7, 24]

During allocution, Fariello's counsel requested a further reduction to the guideline range based on the defendant's limited role in the conspiracy under U.S.S.G. § 3B1.2. However, after considering the evidence outlined in the PSR and presented during the sentencing hearing, the Court denied the request. Her counsel further argued that Fariello's youth (she was 17 when the conspiracy began and 20 at the time of sentencing) supported a sentence below the guideline range.

All relevant factors of Title 18 of the United States Code, Section 3553, were carefully considered when evaluating sentence to be imposed (*i.e.*, the serious nature of the

offense, the history and characteristics of the defendant, the detrimental impact such crimes have on the public, Fariello's need for rehabilitation, and the need for adequate general and specific deterrence to future criminal conduct). And while the Court acknowledged that vocational training and drug treatment would be essential to preparing Fariello to become a productive member of society, the undersigned determined that a term of incarceration of 87 months was necessary under the circumstances presented. These circumstances have not changed. The Court continues to believe that the term of incarceration originally imposed is sufficient, but not greater than necessary, to meet all statutory goals of sentencing as outlined in 18 U.S.C. § 3553(a). While the Court has discretion to reduce Fariello's sentence based on the recent changes in the United States Sentencing Guidelines, any reduction would not be warranted for the reasons explained during the July 30, 2012 sentencing hearing. Instead, it would unduly diminish the seriousness of Fariello's criminal conduct. Accordingly, it is hereby

**ORDERED** that the request contained in Defendant Stephanie Fariello's letter, construed as a motion to reduce her sentence pursuant to 18 U.S.C. § 3582(c) [Record No. 294], is **DENIED**.

This 21st day of November, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge